IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

COMMUNITY TRUST BANK, INC.,
a Kentucky corporation,

           Plaintiff,

v.                                            CIVIL ACTION NO.  3:14-7168

KEVIN SEVERSON,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant Kevin Severson's Motion to Dismiss or Transfer for Improper Venue [or] Lack of Personal Jurisdiction[],[1] ECF No. 11. For the reasons explained below, the Court **GRANTS in part** and **DENIES as moot in part** this Motion. Specifically, the Court **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction; thus, the Court does not reach the other facets of Defendant's Motion. Also pending before the Court is Plaintiff Community Trust Bank's Motion to Dismiss the Counterclaim of Defendant, ECF No. 16. Because this Court lacks personal jurisdiction over Defendant, Plaintiff's Motion cannot be addressed by this Court. This case is hereby **DISMISSED without prejudice** in its entirety.

---

[1] The instant motion was originally titled "Motion to Dismiss or Transfer for Improper Venue, Lack of Personal Jurisdiction or Forum Non Conveniens"; however, Defendant's memorandum in support of this Motion retitles the motion as "Motion to Dismiss for Lack of Jurisdiction and Improper Venue or, in the Alternative, for Change of Venue." *See* Mot. Dismiss; Mem. Supp. Mot. Dismiss, ECF No. 14. Importantly, neither the body of the Motion nor that of the memorandum argues for dismissal or transfer of venue based upon forum non conveniens.

## I. Background

On February 3, 2014, Plaintiff Community Trust Bank ("Plaintiff Bank") filed its Complaint against Defendant Kevin Severson in this Court. ECF No. 1. The Complaint alleges the following:

In 2009, Plaintiff Bank made a $950,000 loan to Tri-State CP System, LLC, ("Tri-State")—a West Virginia limited liability company formed to create and operate a pharmacy school in Huntington, West Virginia—to purchase and renovate a building in Huntington to further the LLC's purpose. Compl. ¶¶ 3, 13, 17-20, 22. After negotiation "apparently as attorney for Tri-State" and in order to get that loan approved, Defendant—a director, officer, and 15% owner of Tri-State—pledged a Certificate of Deposit ("CD") in the principle amount of $150,000 as collateral securing repayment of the loan. *See id.* ¶¶ 3-4, 12, 15-17. The CD in question was already deposited with Plaintiff Bank, and Defendant agreed that the CD would be maintained in Plaintiff Bank's Pullman Square branch vault in Huntington. *Id.* ¶ 19. Defendant also signed a Hypothecation Agreement, which granted Plaintiff Bank a security interest in the CD as partial collateral for the loan, required Defendant to maintain the CD with Plaintiff Bank, and granted Plaintiff Bank a lien on any renewal or extension of the CD for as long as Tri-State remained obligated under the loan. *Id.* ¶ 20. In the meantime, Tri-State executed a promissory note, loan agreement, and credit line deed of trust in favor of Plaintiff Bank, and Plaintiff Bank funded the loan. *Id.* ¶ 22. Each year, in late 2009 and 2010, when the CD matured, Plaintiff Bank prepared a new CD for the following year, and Defendant, in turn, executed an amendment to the Hypothecation Agreement and a collateral receipt. *Id.* ¶¶ 23-24.

In late 2011, Defendant expressed to Tri-State his intent to transfer 8% of his ownership interest in the LLC to a Louisiana limited liability company, and after receiving the forwarded

letter from Tri-State, Plaintiff Bank responded that such transfer caused a default on the loan pursuant to the loan agreement. *Id.* ¶¶ 25-26. Shortly thereafter, Defendant began requesting, on multiple occasions, that his CD not be renewed and that Plaintiff Bank release the proceeds of the CD to him; Plaintiff Bank refused. *Id.* ¶¶ 29-30. Defendant contacted the Huntington, West Virginia, and Ashland, Kentucky, branches of Plaintiff Bank before finally contacting Plaintiff Bank's main office in Pikeville, Kentucky, in November 2012 and representing to a teller there that he was in possession of the CD and that he was entitled to its proceeds. *Id.* ¶¶ 32-33. The teller released a cashier's check to Defendant for $151,128.98. *Id.* ¶ 34. After discovering the error in March 2013, Plaintiff Bank demanded the money back from Defendant. *See id.* ¶¶ 35-37. Defendant refused to return the money. *Id.* ¶ 37. Tri-State filed a chapter 7 bankruptcy petition in July 2013, and the loan is in default. *Id.* ¶ 38.

Plaintiff Bank attaches 21 exhibits to its Complaint and specifically references each exhibit therein. Based upon these allegations, Plaintiff Bank brings claims under conversion, breach of contract, negligence, fraud, and unjust enrichment. *Id.* at 9-13. All legal citations in the Complaint reference West Virginia law. *Id.* Defendant filed a counterclaim for libel, slander, and/or defamation. Def.'s Answer & Countercl. ¶¶ 96-99, ECF No. 10.

On that same day, Defendant also filed the instant Motion. Plaintiff Bank timely filed its Response, ECF No. 18, and Defendant filed no reply. This Motion is now ripe for resolution.

## II. Personal Jurisdiction

**A. Legal Standard**

"When a court's personal jurisdiction [over a defendant] is properly challenged by a Rule 12(b)(2) motion, . . . the burden [is] on the plaintiff ultimately to prove the existence of a ground

for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

> If the existence of jurisdiction turns on disputed factual questions the court may resolve the challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question. But when . . . the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a *prima facie* showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge. In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.

*Id.* (emphasis added) (citation omitted). Additionally, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," and "in the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), the exhibit prevails." Fed. R. Civ. P. 10(c); *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (citation omitted).

"A federal district court may only exercise personal jurisdiction over a [nonresident defendant] if such jurisdiction is authorized by the long-arm statute of the state in which it sits and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment . . . ." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). "Because the West Virginia long-arm statute is coextensive with the full reach of due process, . . . the statutory inquiry necessarily merges with the Constitutional inquiry." *In re Celotex Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997) (citations omitted). Thus, the only remaining inquiry for a district court which sits in West Virginia is whether the exercise of personal jurisdiction over the defendant is consistent with due process. *See id.* at 628.

To comport with this due process requirement, a district court may exercise specific personal jurisdiction over a defendant only if he has "sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Consulting Engineers Corp.*, 561 F.3d at 277 (internal quotation marks omitted); *see also CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009). This inquiry "focuses on the relationship among the defendant, the forum, and the litigation." *Walden*, 134 S. Ct. at 1121 (internal quotation marks omitted). Thus, a court must focus upon "contacts that the defendant *himself* creates" and only such contacts "with the *forum State itself*, not [merely] the defendant's contacts with persons who reside there." *Id.* at 1122 (emphasis added) (internal quotation marks omitted). A court must do "more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 301 (4th Cir. 2012). Thus, "a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum." *Id.* (internal quotation marks omitted).

The Fourth Circuit employs a three-pronged evaluation to determine whether specific jurisdiction may be constitutionally exercised over a defendant: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391-92 (4th Cir. 2012) (brackets removed).

The first prong "is designed to ensure that the defendant is not haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts. It protects a defendant from having

to defend himself in a forum where he should not have anticipated being sued." *Consulting Engineers Corp.*, 561 F.3d at 277 (citation omitted) (internal quotation marks omitted). In the business context, the following nonexclusive factors have been considered in seeking to resolve whether a defendant has engaged in purposeful availment:

> [1] whether the defendant maintains offices or agents in the forum state; [2] whether the defendant owns property in the forum state; [3] whether the defendant reached into the forum state to solicit or initiate business; [4] whether the defendant deliberately engaged in significant or long-term business activities in the forum state; [5] whether the parties contractually agreed that the law of the forum state would govern disputes; [6] whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; [7] the nature, quality and extent of the parties' communications about the business being transacted; and [8] whether the performance of contractual duties was to occur within the forum.

*Id.* at 278 (citations omitted).

"The second prong . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278-79. "The analysis here is generally not complicated. Where activity in the forum state is the genesis of the dispute, this prong is easily satisfied." *Tire Eng'g & Distribution*, 682 F.3d at 303 (brackets omitted) (internal quotation marks omitted).

"The third prong, constitutional reasonableness, protects a party from litigation so gravely difficult and inconvenient that the party unfairly is at a severe disadvantage in comparison to its opponent." *ESAB Grp.*, 685 F.3d at 392 (brackets omitted) (internal quotation marks omitted). This final prong allows a court to consider additional factors to ensure the appropriateness of the forum, including:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Engineers Corp.*, 561 F.3d at 279. "To defeat jurisdiction on this basis, a defendant must establish, despite the presence of minimum contacts, a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *ESAB Grp.*, 685 F.3d at 393 (internal quotation marks omitted).

**B.     Analysis**

Defendant argues that this Court lacks personal jurisdiction over him because 1) Plaintiff Bank is a citizen of Kentucky, not West Virginia—and thus, according to Defendant, for the purpose of this suit, Plaintiff Bank's employees must necessarily be citizens of Kentucky as well—; 2) Defendant never physically arrived in West Virginia in relation to this transaction nor did he execute any documents there; 3) Plaintiff Bank was not certified to transact business in West Virginia until after the agreements at the center of this case were executed; 4) no contract between Defendant and Plaintiff Bank, to his knowledge, was drafted[2] or executed in West Virginia, unless such was done by one of Plaintiff Bank's employees without Defendant's knowledge; 5) the CDs at issue included a wager on the University of Kentucky's men's basketball team wins; 6) there was no agreement that Defendant would keep the CDs with Plaintiff Bank throughout the life of Tri-State's loan; 7) Defendant did not personally sign any of the loan agreements between Tri-State and Plaintiff Bank; 8) four out of the five substantive counts are based upon alleged acts which took place in Kentucky (breach of contract, negligence, fraud, and unjust enrichment); and 9) the CD contracts could have been performed in any state.

Defendant attaches to his Motion a sworn affidavit, which states that 1) he has not executed any agreements in West Virginia; 2) he owns no investments or business interests in West Virginia other than one "minority interest" in an LLC located in West Virginia—presumably

---

[2] Defendant asserts that the CDs identified in the Complaint were completed on forms which stated "St. Cloud, MN."

Tri-State—which has no current value[3]; 3) he owns no interest in real property located in West Virginia; 4) he does not intend to enter into any transactions in West Virginia in the future; 5) he "never agreed to maintain anything of value" in West Virginia; 6) he "never knowingly transacted any business" in West Virginia, other than business in regards to the LLC; 7) he has not represented any West Virginia business as an attorney; and 8) he was not aware that any dealings with Plaintiff Bank were anything other than temporary or that Plaintiff Bank was a citizen of any state other than Kentucky. ECF No. 14-1.

Plaintiff Bank argues that this Court has specific personal jurisdiction over Defendant 1) because of Defendant's managerial role as a director and his either 15% or 21% ownership interest in Tri-State[4]—an LLC which either planned to purchase or already owned property in West Virginia, which was registered in West Virginia, and which kept its principal place of business in West Virginia—; 2) because Tri-State executed the loan agreement with Plaintiff Bank pursuant to a Tri-State "Action of Directors" document which specifically authorized the execution of the loan agreement between Tri-State and Plaintiff Bank and which was signed by Defendant[5]; 3) because the loan agreement contained a clause which stated that jurisdiction over any claim arising out of that agreement would be proper in West Virginia; 4) because Defendant negotiated the guarantee terms of the loan agreement—at least in relation to the request that he serve as a personal guarantor to that agreement—; 5) because Defendant granted Plaintiff Bank a security interest in his personal $150,000 CD to help facilitate the deal underlying the loan agreement via the separate Hypothecation Agreement; 6) because the Hypothecation Agreement and Defendant's pledge of

---

[3] This statement appears to be in conflict with Defendant's Memorandum in support of the instant Motion, in which Defendant does not directly deny that he is and was a director of Tri-State or that Tri-State took out a nearly $1,000,000 loan to buy property, yet he denies knowledge that Tri-State filed for bankruptcy in 2013. *See* Mem. Supp. Mot. Dismiss at 3.
[4] *See* Resp. at 3.
[5] Though not attached to the Complaint, this document was attached to Plaintiff Bank's Response as Exhibit B. *See* ECF No. 18-2.

the CD as collateral were both specifically mentioned in the loan agreement[6]; 7) because, at least after the CD was deposited in the vault at Plaintiff Bank's West Virginia branch, Defendant knew of the location of the CD in West Virginia[7]; 8) because the Bank renewed the CD twice while the original CD was physically located at the West Virginia branch; and 9) because Defendant "corresponded for several months" with Plaintiff Bank's employees and counsel in West Virginia, presumably after he was attempting to retrieve possession of the CD. Resp. at 2-6, 11.

Even if this Court ignores Defendant's sworn affidavit, construes all allegations in the light most favorable to Plaintiff Bank, and applies the lower prima facie standard, it must find that Plaintiff Bank has failed to carry its burden to prove that this Court, located in West Virginia, may properly exercise specific personal jurisdiction over Defendant.

Plaintiff Bank regularly confuses jurisdiction over Tri-State with jurisdiction over Defendant. Defendant did not sign the loan agreement, and even if he had signed it on behalf of Tri-State, Plaintiff Bank's own Exhibit T to the Complaint, a letter from its Senior Vice President and Senior Staff Attorney, states that the loan was originated at Plaintiff Bank's Ashland, *Kentucky*, branch. *See* ECF No. 1-20; *see also* Loan Agreement Schedule D, ECF No. 18-3 (indicating Plaintiff Bank's address as "Lender" as an address in Ashland, Kentucky). Additionally, the Court will not credit Plaintiff Bank's argument that Defendant, by signing the single-page Tri-State "Action of Directors" document authorizing a different member of the LLC to enter into the thirty-nine page loan agreement on behalf of Tri-State, somehow personally

---

[6] *See* ECF No. 18-3 at 14.
[7] In the "Law and Argument" section of its Response, Plaintiff Bank states that Defendant "tendered the CD to [Plaintiff] Bank's Huntington, West Virginia branch." Resp. at 11. Tellingly, however, the more detailed "Relevant Facts" section of Plaintiff Bank's Response states, first, that Defendant "delivered the CD to [Plaintiff] Bank," citing Exhibits G and H to the Complaint, and, second, that "[t]he CD *was placed* in [Plaintiff] Bank's Pullman Square location in Huntington, West Virginia, as it was intended to secure a loan made to a business located and operating in Huntington, West Virginia." *Id.* at 5 (emphasis added). A review of both the Hypothecation Agreement—Exhibit G—and the Collateral Receipt signed by Defendant on July 14, 2009,—Exhibit H— shows that neither indicates where the CD would be held. *See* ECF Nos. 1-7 & 1-8. In fact, Plaintiff Bank's address as "Lender" on the Collateral Receipt is listed as an address in Pikeville, Kentucky. *See* ECF No. 1-8.

adopted the jurisdiction clause in the loan agreement and therefore waived his right to contest jurisdiction if a suit was brought against him personally in West Virginia. The fact that Defendant negotiated for and authorized the use of his CD as collateral for the loan and that the loan agreement specifically references the Hypothecation Agreement between Plaintiff Bank and Defendant does not change the Court's conclusion in this regard. The relevant inquiry is what action Defendant *himself* took to purposefully avail himself of the privilege of conducting activities in West Virginia. The unilateral action of a third party—even one in which Defendant has a business interest—cannot lead to jurisdiction over Defendant. *See Walden*, 134 S. Ct. at 1122; *V-E2, LLC v. Callbutton, LLC*, No. 3:10CV538, 2012 WL 6108245, at *3 (W.D.N.C. Dec. 10, 2012). Defendant's hair-thin connection to the jurisdiction clause in the loan agreement—which originated in Kentucky—is far too attenuated to claim that Defendant thereby created contacts with West Virginia anywhere near that which would be required to constitutionally exert personal jurisdiction over him in that state.

Additionally, Defendant's interest in and out-of-state management of Tri-State does not confer specific personal jurisdiction over him in West Virginia. *See V-E2*, 2012 WL 6108245, at *3 ("[P]ersonal jurisdiction over a limited liability company does not automatically extend to its members, as membership in an LLC is not sufficient in-and-of itself to confer personal jurisdiction over its members. To hale a member of an LLC into a foreign court, the member sought to [be] held answerable must have had minimum contacts with the forum state independent of those of the LLC." (citations omitted)).

Moreover, Plaintiff Bank's exhibits and, indeed, even its recounting of events in its Response indicate that Plaintiff Bank—not Defendant—unilaterally decided that the CD would be held in the Huntington, West Virginia, branch. However, even if Defendant knew and, further,

agreed that the CD would be held in West Virginia before it was deposited there, the Court simply cannot find that Defendant thereby purposefully availed himself of the privilege of conducting activities in West Virginia. Defendant's later, limited communications with Plaintiff Bank from afar also do not shift the balance here. It would be contrary to the entire purpose of the limits on the exercise of personal jurisdiction to find that such jurisdiction is created by mail, email, and/or telephone communications between the parties—one of whom is a resident of the forum state—after a dispute has arisen when such jurisdiction did not exist before the dispute arose. Finally, there is no indication that Defendant has ever physically appeared in West Virginia, and he does not maintain an office there.

Taking all of Defendant's contacts with West Virginia into account as a whole, the Court finds that specific personal jurisdiction cannot be exercised over Defendant under the first prong—which requires purposeful availment by Defendant—and the second prong—which requires that the claims arise out of Defendant's purposeful availment—of the Fourth Circuit's specific jurisdiction three-prong analysis. Defendant's motion to dismiss for lack of personal jurisdiction must therefore be granted.[8]

### III. Conclusion

For the reasons explained above, Defendant's Motion to Dismiss or Transfer for Improper Venue [or] Lack of Personal Jurisdiction[], ECF No. 11, is **GRANTED in part** and **DENIED as**

---

[8] Plaintiff Bank also argues that this Court may properly exercise general jurisdiction over Defendant because his activities in West Virginia have been "continuous and systematic" through his ownership of and responsibilities regarding Tri-State. Resp. at 8. In order to establish general jurisdiction—under which a defendant may be haled into court in a forum state on causes of action arising from dealings entirely distinct from those activities a defendant actually conducted in the state—, a defendant's affiliations with the forum state must be "so continuous and systematic as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (internal quotation marks omitted) (brackets omitted). It is unclear whether general jurisdiction may ever be established over a nonresident individual. *See Burnham v. Superior Court of Cal., Cnty. of Marin*, 495 U.S. 604, 610 n.1 (1990) ("It may be that whatever special rule exists permitting continuous and systematic contacts to support jurisdiction with respect to matters unrelated to activity in the forum applies *only* to corporations, which have never fitted comfortably in a jurisdictional regime based primarily upon de facto power over the defendant's person." (citation omitted) (internal quotation marks omitted)). However, this issue need not be resolved in this case. It is clear that Defendant's limited activities in West Virginia are unquestionably insufficient to establish general jurisdiction over him there.

**moot in part**. Specifically, the Court **GRANTS** Defendant's motion to dismiss for lack of personal jurisdiction; thus, the Court does not reach the other facets of Defendant's Motion. Because this Court lacks personal jurisdiction over Defendant, Plaintiff's Motion to Dismiss the Counterclaim of Defendant, ECF No. 16, cannot be addressed by this Court. This case is hereby **DISMISSED without prejudice** in its entirety.

    The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

    ENTER:    July 17, 2014

_____
ROBERT C. CHAMBERS, CHIEF JUDGE